Filed 9/19/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ELEANOR MALLOY, | B318588 |
| Petitioner, | (Los Angeles County Super. Ct. No. 21STCV29895) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| COMPREHENSIVE PRINT GROUP LLC et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS in mandate. Michael L. Stern, Judge. Petition Granted.

King & Siegel, Julian Burns King and Margaret R. Wright for Petitioner.

Fisher & Phillips, Kyley S. Chelwick and Megan E. Walker for Real Party in Interest Stanley Spencer.

Jackson Lewis, Ellen E. Cohen, Dylan B. Carp and JaVon A. Payton for Real Party in Interest American Pacific Printers College, Inc.

Oz Law Group, Inc. and Greg Ozhekim for Real Party in Interest Comprehensive Print Group LLC.

_____

California's Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.),[1] enacted in 1980, establishes a comprehensive framework to safeguard the right of all individuals to seek, obtain and hold employment free from discrimination. (§ 12920; *Brown v. Superior Court* (1984) 37 Cal.3d 477, 485 (*Brown*); *Hirst v. City of Oceanside* (2015) 236 Cal.App.4th 774, 782.) As one means of furthering FEHA's express purpose to provide effective remedies for discriminatory practices, a special venue provision allows plaintiffs to file a lawsuit "in any county in the state in which the unlawful practice is alleged to have been committed, in the county in which the records relevant to the practice are maintained and administered, or in the county in which the aggrieved person would have worked . . . but for the unlawful practice." (§ 12965, subd. (c)(3);[2] see *Brown*, at p. 486 ["[T]he costs of litigation pose a

---

[1]     Statutory references are to this code unless otherwise stated.

[2]     Government Code section 12965, subdivision (c)(3), further provides, "[I]f the defendant is not found within any of these counties, an action may be brought within the county of the defendant's residence or principal office." This additional, alternative venue provision thus tracks the general venue statute, which requires, "except as otherwise provided by law," a

formidable barrier to the filing and prosecution of a FEHA action. The Legislature recognized this barrier and sought to alleviate it by providing those persons [victims of employment discrimination] with a wide choice of venue"].)[3]

Today, more than four decades after the original passage of FEHA, as a result of advances in technology and the impact of the COVID-19 pandemic, working remotely is no longer an infrequently conferred perquisite, but an increasingly common and necessary adaptation to the demands of modern life.[4]  What

---

lawsuit to be filed "in the county where the defendants or some of them reside at the commencement of the action."  (Code Civ. Proc., § 395, subd. (a).)

When enacted with the original 1980 legislation creating FEHA, the special venue provision was part of section 12965, subdivision (b).  (Stats. 1980, ch. 992, § 4, p. 3157.)  Minor, nonsubstantive changes have been made to the language of the provision throughout the years, and, effective January 1, 2022, it was redesignated as section 12965, subdivision (c)(3), without any further change in text.  (Stats. 2021, ch. 278, § 7.)

[3]  The Supreme Court recognized that victims of employment discrimination are "frequently unemployed—many times as the result of the alleged discrimination" and "often lack financial resources."  (*Brown*, *supra*, 37 Cal.3d at p. 486.)

[4]  "Remote work is here to stay," proclaimed a recent article in Forbes.  (Robinson, *Remote Work Is Here To Stay and Will Increase Into 2023, Experts Say* (Feb. 1, 2022) Forbes <https://www.forbes.com/sites/bryanrobinson/2022/02/01/remote-work-is-here-to-stay-and-will-increase-into-2023-experts-say/?sh=ea00dbf20a6c> [as of Sept. 19, 2022], archived at https://perma.cc/R4VN-H56D>.)  That prediction was amply

does this increase in remote work mean for the ability of victims of employment discrimination to utilize the liberal FEHA venue statute?  In particular, in the matter now before us, may Eleanor Malloy bring her lawsuit for pregnancy discrimination, interference and retaliation in Los Angeles County, where she had been working remotely before being fired, or did the allegedly unlawful practices—terminating her employment while on protected pregnancy leave—occur only at her employer's office in Orange County, which must also be deemed the location where Malloy would have worked but for the unlawful practices?

Respondent Los Angeles Superior Court, in a terse order, granted Malloy's employers' motion for change of venue, concluding venue was proper only in Orange County.  We disagree, grant Malloy's petition for writ of mandate and order respondent superior court to vacate its order granting the motion for change of venue and to enter a new order denying the motion, permitting Malloy's case to proceed in Los Angeles County.

---

supported by a report from the United States Bureau of Labor Statistics, which found, as a result of the COVID-19 pandemic, 34.5 percent of business establishments had increased "telework" for some or all of their employees and, among those establishments, 60.2 percent expected to keep the increases permanent when the pandemic is over.  (Bureau of Labor Statistics*, U.S. Business Response to the COVID-19 Pandemic News Release* (Feb. 9, 2022) <https://www.bls.gov/news.release/covid2.htm#> [as of Sept. 19, 2022], archived at <https://perma.cc/729S-95SV>.)

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Malloy's Complaint*

On August 12, 2021 Malloy filed a verified complaint against Comprehensive Print Group LLC and its subsidiary American Pacific Printers College, Inc.[5] for pregnancy and gender discrimination (§ 12940, subd. (a)) and sex- and gender-based harassment (§ 12940, subd. (j)(1)) in violation of FEHA; interference with her leave rights and retaliation for attempting to exercise those rights under the Pregnancy Disability Leave Law (PDLL) (§ 12945) and the California Family Rights Act (CFRA) (§ 12945.2); failure to prevent harassment, discrimination and retaliation in violation of FEHA (§ 12940, subd. (k)); and wrongful termination in violation of public policy. Stanley Spencer, the chief executive officer of Comprehensive Print Group, was named a defendant in the cause of action for sex- and gender-based harassment.[6]

Malloy alleged she was hired as an assistant to Spencer in October 2018 after meeting him while working for a pet-sitting company. The scope of Malloy's work quickly expanded to handling client meetings and accounts independently. According to Malloy, during her first 18 months at the company, Spencer

---

[5] Malloy alleged each of the corporate defendants had more than five employees, qualifying it as an "employer" under FEHA. (§ 12926, subd. (d).)

[6] Kenny the Printer LLC, another subsidiary of Comprehensive Print Group, was also named a defendant, but was dismissed from the action at Malloy's request on August 31, 2021.

routinely made offensive comments to and about her, including denigrating her because of her gender, expressing an inappropriate interest in her personal life and suggesting they could become a couple.

As pertinent to the venue issue,[7] Malloy alleged she and other employees of the companies began working remotely on March 17, 2020 due to the COVID-19 pandemic. In mid-September 2020 Malloy informed Spencer by telephone that she was pregnant. "Spencer congratulated her and volunteered that she would be able to work from home both during and after her pregnancy in light of health concerns posed by the COVID-19 pandemic."

On March 3, 2021, while 37 weeks pregnant, Malloy was diagnosed with sudden-onset gestational hypertension and preeclampsia, was advised to seek emergency medical treatment and was placed off work by her doctor. That day Malloy emailed Spencer and a company payroll representative, attaching the note from her physician authorizing her leave from work from March 3, 2021 to May 9, 2021. Spencer responded, "Thanks." Malloy also telephoned Spencer on March 3, 2021 and left a voicemail message explaining she wanted to discuss her right to a leave. The call was not returned.

Malloy gave birth to her son on March 14, 2021. In early April Malloy inquired about adding her son to the company's insurance plan and told Spencer she was off work and planned to

---

[7] The complaint alleged venue was proper in Los Angeles County "because Defendants do business in Los Angeles County and because Plaintiffs [*sic*] worked and earned wages in Los Angeles County as described herein."

6

return on May 10, 2021. On April 7, 2021 Spencer left a voicemail message responding to the insurance matter and indicating he wanted to speak to Malloy "about what your availability will be, once you come back to work" because "we've got some structural changes going on."

On April 12, 2021 Spencer telephoned Malloy and asked if she had heard his voicemail regarding working in person two-to-three times per week. Malloy replied, if required to return to work in May, she could not work in person for childcare reasons for at least one month. Spencer demanded Malloy immediately return to work in person, asserting he "*really needed someone in the office.*" The following day in a telephone call Spencer fired Malloy because she had refused to return to work at the office in person. Malloy alleged Spencer "further explained [that] employing her was '*not going to work*' for him because she was making it '*inconvenient*' for him to run his business." The letter of termination Malloy received with her final payment listed her separation date as March 3, 2021.

2. *The Motion for Change of Venue*

On November 9, 2021, together with his answer to Malloy's complaint, Spencer moved for a change of venue to Orange County, contending Los Angeles County was an improper venue under both FEHA and the Code of Civil Procedure. As to Malloy's statutory claims, Spencer argued the unlawful practices alleged by Malloy were committed in Orange County; all records relating to her lawsuit were maintained in Orange County; and Malloy's employment was based in Orange County, where she would have continued to work "but for her separation of employment." For purposes of Malloy's common law claim for wrongful termination (a claim as to which Spencer was not

7

named a defendant), Spencer argued only Orange County was a proper venue because Comprehensive Print Group's and American Pacific Printers's principal places of business were in Orange County and Spencer resided in Orange County. Finally, citing Code of Civil Procedure section 397, subdivision (c), Spencer alternatively urged the court to exercise its discretion to order a change of venue to Orange County based on the convenience of witnesses and to promote the ends of justice.

In a declaration in support of the motion for change of venue, Spencer stated Malloy had worked for American Pacific Printers, where he had been vice president for sales, from October 1, 2018 to December 31, 2020, and for Comprehensive Print Group from January 1, 2021 until termination of her employment. Spencer declared that Malloy "worked primarily in [the companies'] offices, which were located in Orange County." He also explained, "During the COVID-19 pandemic some staff members, such as Plaintiff, worked remotely; however, both [companies] remained open and active in Orange County throughout the pandemic." American Pacific Printers and Comprehensive Print Group joined in Spencer's motion.

Malloy filed an opposition, arguing Los Angeles County was the proper venue for her FEHA pregnancy discrimination, interference and retaliation causes of action because the unlawful employment practices occurred in Los Angeles while she was working from home or on protected pregnancy disability leave, and she would have continued working in Los Angeles at least until June 10, 2021 if not for the FEHA violations (including her wrongful termination). The opposition also explained under *Brown*, *supra*, 37 Cal.3d 477, the FEHA venue statute controlled in a "mixed" lawsuit when causes of action under FEHA were

8

brought along with non-FEHA causes of action that arose from the same facts.

Malloy submitted her declaration with the opposition papers, stating she started working remotely from her home on March 17, 2020; "[o]ther than one occasion in which I went in to the office in mid-2020, I continued to work for Defendants exclusively from my home from March 17, 2020 until my termination on April 13, 2021"; she was at home when Spencer notified her she was being fired and received the paperwork memorializing her termination at her home; and she would have continued working out of her home following her return from pregnancy leave on May 10, 2020, "through at least June 10, 2021, due to my childcare obligations."

Spencer filed a reply in support of his motion, acknowledging the FEHA venue provision applied, "possibly as to the entire action," but arguing venue was proper only in Orange County under that statute. Spencer also reiterated that, even if venue was proper in Los Angeles County, the convenience of witnesses justified a transfer to Orange County.

The court heard oral argument on February 2, 2022. (No court reporter was present at the hearing.) It issued its ruling the same day, allowing the joinders by Comprehensive Print Group and American Pacific Printers and granting Spencer's motion, finding, "Proper venue lies in Orange County." In its written order the court cited, without additional explanation, *Ford Motor Credit Co. v. Superior Court* (1996) 50 Cal.App.4th

9

306, a FEHA venue case,[8] and stated, "Venue is not proper pursuant to Code of Civil Procedure section 395." The order did not cite Government Code section 12965, subdivision (c)(3). The court did not rule on Spencer's alternative motion to transfer venue for the convenience of witnesses pursuant to Code of Civil Procedure section 397, subdivision (c).

    3. *Malloy's Writ Petition*

Malloy petitioned this court on February 24, 2022 for a writ of mandate,[9] arguing the superior court had improperly disregarded (or misapplied) the special FEHA venue statute, which authorized the filing of her lawsuit in Los Angeles County based on the allegations in her complaint, supported by her declaration in opposition to the motion for change of venue, that the FEHA violations had been committed in Los Angeles County and she would have continued working remotely in Los Angeles County but for the FEHA violations of real parties in interest (real parties). We requested and received a preliminary

---

[8]     In *Ford Motor Credit v. Superior Court, supra,* 50 Cal.App.4th 306 our colleagues in Division Five of this court held venue for plaintiffs' FEHA action was mandatory in Sacramento County, where plaintiffs had been employed and where they alleged all the acts of racial discrimination, harassment and retaliation took place, not in Los Angeles County, "where they now reside." (*Id.* at p. 308.) The case did not involve any issue of remote or off-site work.

[9]     On February 9, 2022 Spencer served written notice of the February 2, 2022 order granting his motion for change of venue. Malloy's petition was filed within 20 days of that date as required by Code of Civil Procedure section 400.

10

opposition from Spencer, joined by Comprehensive Print Group and American Pacific Printers.

In light of the potential statewide significance of the issue presented—the proper application of section 12965, subdivision (c)(3), to FEHA lawsuits filed by individuals who were working remotely at the time of the allegedly unlawful employment practices—we ordered respondent superior court to show cause why it should not be compelled to vacate its order granting the motion for change of venue and to issue a new order denying the motion.  (Cf. *K.R.L. Partnership v. Superior Court* (2004) 120 Cal.App.4th 490, 496, fn. 6 ["[a]n order granting or denying a motion to transfer venue is reviewable only by petition for writ of mandate"]; *Calhoun v. Vallejo City Unified School Dist.* (1993) 20 Cal.App.4th 39, 41-42 [same], disapproved on another ground in *K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 888, fn. 6.)

## DISCUSSION

1.  *Standard of Review*

Generally an order granting or denying a motion to transfer venue is reviewed for abuse of discretion.  (*Williams v. Superior Court* (2021) 71 Cal.App.5th 101, 108; *Crestwood Behavioral Health, Inc. v. Superior Court* (2021) 60 Cal.App.5th 1069, 1075.)  However, when, as here, determining proper venue depends on a question of statutory interpretation, our review of that aspect of the issue is de novo.  (*County of Siskiyou v. Superior Court* (2013) 217 Cal.App.4th 83, 92 [applying de novo review when writ petition challenging denial of transfer motion presented purely legal issues]; see *In re E.F.* (2021) 11 Cal.5th 320, 326; *Christensen v. Lightbourne* (2019) 7 Cal.5th 761, 771; see also *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-

11

712 ["The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review.  The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious"; fns. omitted]; *People v. Eubanks* (1996) 14 Cal.4th 580, 595 ["[t]he discretion of a trial court is, of course, "'subject to the limitations of legal principles governing the subject of its action'"'"].)

    2. *Governing Law*

It is an unlawful employment practice under FEHA, unless based on a bona fide occupational qualification, for an employer, because of the sex of a person, to discharge that person from employment or to discriminate against the person in terms, conditions or privileges of employment.  (§ 12940, subd. (a).) Section 12926, subdivision (r)(1), defines "sex" for purposes of FEHA's anti-discrimination provisions to include pregnancy or medical conditions related to pregnancy and childbirth.

FEHA, through the PDLL, also provides it is an unlawful employment practice "[f]or an employer to refuse to allow an employee disabled by pregnancy, childbirth, or a related medical condition to take a leave for a reasonable period of time not to exceed four months and thereafter return to work." (Gov. Code, § 12945, subd. (a)(1).)  It is also unlawful for an employer "to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right provided under this section." (Gov. Code, § 12945, subd. (a)(4).)  An employee may exercise her right to pregnancy disability leave after childbirth for the period the employee is unable to work because of her pregnancy or a

12

pregnancy-related medical condition.  (Cal. Code Regs., tit. 2, § 11042, subd. (a)(3).)

CFRA, also part of FEHA, provides it is an unlawful employment practice for an employer to refuse to grant a qualified employee up to 12 weeks per year of job-protected family care and medical leave, which includes leave to bond with a newborn.  (Gov. Code, § 12945.2, subd. (b)(4)(A) ["for reason of the birth of a child"]; Cal. Code Regs., tit. 2, § 11087, subd. (s) ["'[r]eason of the birth of a child,' within the meaning of Government Code section 12945.2 and these regulations includes, but is not limited to, bonding with a child after birth"].)  As with other provisions of FEHA, it is unlawful for an employer to discharge an employee for her or his exercise of the right to family care and medical leave.  (Gov. Code, § 12945.2, subd. (k)(1).)

And to reiterate, section 12965, subdivision (c)(3), authorizes an aggrieved party to file a FEHA action in the county in which the alleged unlawful employment practice was committed or in the county in which the individual would have worked but for the unlawful practice.[10]  Under *Brown*, *supra*, 37 Cal.3d 477 the special provisions of this FEHA venue statue "control in cases involving FEHA claims joined with non-FEHA claims arising from the same facts."  (*Id*. at p. 487.)[11]  As the

---

[10]     There is no contention Los Angeles County is the proper venue for Malloy's lawsuit as the county in which the records relevant to the alleged unlawful practices are maintained.

[11]     One of the non-FEHA claims at issue in *Brown*, *supra*, 37 Cal.3d 477 and held to be controlled by the special FEHA venue provision was for wrongful discharge, a cause of action that

13

Court explained, "The wide choice of venue afforded plaintiffs by the FEHA venue statute effectuates enforcement of that law by permitting venue in a county which plaintiffs deem the most appropriate and convenient.  The Legislature clearly intended the FEHA venue provisions to apply not only to FEHA actions, but also to related claims pled under alternative theories but based on the same set of facts.  To hold otherwise would dilute the efficacy of the injured employee's remedy by gutting the FEHA's special venue provisions.  The important civil rights which the act codifies would in turn be rendered meaningless." (*Ibid*.)

In reaching its conclusion the FEHA venue provisions apply to the entire case in which a FEHA cause of action is asserted, the Supreme Court in *Brown* emphasized the Legislature's decision to afford a wide choice of venue to FEHA plaintiffs "maximizes the ability of persons aggrieved by employment discrimination to seek relief from the courts, and it facilitates the enforcement of the FEHA." (*Brown*, *supra*, 37 Cal.3d at p. 486.)  We give such remedial legislation a liberal construction to promote its objective.  (See *Robinson v. Fair Employment & Housing Com*. (1992) 2 Cal.4th 226, 233; *In re T.G.* (2020) 58 Cal.App.5th 275, 295.)

3. *Venue Was Proper in Los Angeles County*

The issue before us  is whether any of the unlawful employment practices alleged by Malloy—in particular, real parties' interference with her PDLL or CFRA leave rights—were committed in Los Angeles County within the meaning of

was based on the same allegedly discriminatory practices as the FEHA cause of action.  (*Id.* at pp. 482, 488-489.)

14

section 12965, subdivision (c)(3), or whether termination of her employment before she returned to working remotely from her home qualifies Los Angeles County as the county in which she would have worked but for the unlawful practices.[12]

"Venue is determined based on the complaint on file at the time the motion to change venue is made." (*Brown, supra,* 37 Cal.3d at p. 482; accord, *Williams v. Superior Court, supra,* 71 Cal.App.5th at p. 108; *Dow AgroSciences LLC v. Superior Court* (2017) 16 Cal.App.5th 1067, 1076.) Here, Malloy alleged in her complaint she was working with her employer's consent from her home in Los Angeles County beginning in mid-March 2020 due to the COVID-19 pandemic; in September 2020 Spencer told her she could continue to work from home during and after her pregnancy; on March 3, 2021 her physician directed her to cease

---

[12] Although Comprehensive Print Group and American Pacific Printers are named as defendants in all of Malloy's FEHA causes of action, for whatever reason Spencer, who is a defendant only in the cause of action for sex- and gender-based harassment, took the lead in moving to change venue. Most (although not all) of Spencer's allegedly offensive remarks were made prior to March 2020, while Malloy was working at the Orange County office. That a FEHA lawsuit against Spencer based on allegations of sexual harassment might not be proper in Los Angeles, however, is not material to our analysis; for, "so long as the plaintiff chooses a venue that is proper as to one defendant, the entire case may be tried there, regardless of whether venue would be improper with respect to other defendants if the causes of action against them were analyzed separately." (*K.R.L. Partnership v. Superior Court, supra,* 120 Cal.App.4th at p. 504; accord, *Monogram Co. of California v. Kingsley* (1951) 38 Cal.2d 28, 31-32.)

15

working due to pregnancy-related health conditions and authorized leave from work due to those conditions through May 9, 2021, information Spencer acknowledged without objection; and Malloy advised Spencer in early April 2021 she planned to return to work on May 10, 2021 (when her newborn would be eight weeks old), but would need to continue to work from home for at least one more month.  In response to Malloy's plans and her "refusal" to return immediately to in-person work in Orange County, her employment was terminated on April 13, 2021 with a purported effective date of March 3, 2021.

Neither Spencer nor the corporate real parties presented any evidence in the trial court disputing those allegations, although Spencer argued in his legal memorandum (without mentioning this point in his supporting declaration) that Malloy always worked from Orange County and would have been immediately required to return to the company's Orange County office if she had not been fired.

### a. *Real parties interfered with Malloy's leave rights in Los Angeles County*

Evaluations of Malloy's employment status, including the decision to fire her when she refused to immediately return to in-person work in mid-April 2021, were undoubtedly made in Orange County.  Malloy's complaint does not allege otherwise.  Thus, as real parties assert, those allegedly unlawful employment practices (sex-, gender- and pregnancy-based discrimination) were committed in Orange County, not Los Angeles County.  We also agree with real parties that the fact Malloy learned of the decision to terminate her employment via email or telephone call, and not in person at the companies' offices, does not mean the unlawful practices were committed

16

wherever Malloy was at the time she received the information. As real parties contend, the FEHA venue statute is not so expansive as to allow a plaintiff who receives a "you're fired" email while vacationing at Lake Tahoe to file a lawsuit in Placer County regardless of the location of the employer's offices or where he or she actually worked. (Malloy makes no such argument, reciting she received various communications from Spencer via email and telephone at her home only to emphasize her presence in Los Angeles County, where she had been working remotely and where she intended to return to work following her PDLL/CFRA leave.)

Malloy's cause of action for interference with her PDLL rights, however, stands on a different ground. As discussed, section 12945, subdivision (a)(4), makes it an unlawful employment practice for an employer "to interfere with" an employee's exercise of, or attempt to exercise, her right to pregnancy disability leave. Here, because of a pregnancy-related medical condition, Malloy's doctor on March 3, 2021 ordered her not to work from that date through May 9, 2021, approximately six weeks after her scheduled due date. Malloy was on leave at her home in Los Angeles County, where she had been working on March 3, 2021, when real parties in early April demanded she immediately return to work in person in Orange County and fired her when she said she could not.

"Interfere" means "to enter into or take a part in the concerns of others" or "to interpose in a way that hinders or impedes: come into collision or be in opposition." (Merriam-Webster Dict. Online <https://www.merriam-webster.com/dictionary/interfere> [as of Sept. 19, 2022], as

17

archived <https://perma.cc/8VJ8-PK3V> ; see also Cambridge English Dict. Online <https://dictionary.cambridge.org/us/dictionary/english/interfere> [as of Sept. 19, 2022], archived at <https://perma.cc/4VKT-GY6G> ["to involve yourself in a situation when your involvement is not wanted or is not helpful"].)  Under the plain meaning of the statutory language, therefore, real parties interfered with Malloy's leave rights in Los Angeles County, where they were being exercised, not in Orange County.  (See *People v. King* (2006) 38 Cal.4th 617, 622 [if the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls]; *People v. Birkett* (1999) 21 Cal.4th 226, 231 ["[w]e must follow the statute's plain meaning, if such appears, unless doing so would lead to absurd results the Legislature could not have intended"]; see also *First Student Cases* (2018) 5 Cal.5th 1026, 1035 ["""[i]f the statute's text evinces an unmistakable plain meaning, we need go no further""""]; *People v. Gray* (2014) 58 Cal.4th 901, 906 ["[i]f no ambiguity appears in the statutory language, we presume that the Legislature meant what it said, and the plain meaning of the statute controls"].)

Construing the language of section 12965, subdivision (c)(3), broadly to effectuate its purpose of "permitting venue in a county which plaintiffs deem the most appropriate and convenient" (*Brown, supra*, 37 Cal.3d at p. 487), Malloy's cause of action for interference with her PDLL rights—and, therefore, all her causes of action arising from the same set of operative facts—was properly filed in Los Angeles County.

### b. *Malloy would have continued to work in Los Angeles County but for the unlawful employment practices*

Malloy, as well as other employees of Comprehensive Print Group and American Pacific Printers, began working remotely with the onset of the COVID-19 pandemic in mid-March 2020. (In his declaration Spencer acknowledged "some staff members, such as Plaintiff," worked remotely, but added both companies "remained open and active in Orange County throughout the pandemic.") In her complaint Malloy alleged, when she advised Spencer she was pregnant in September 2020, he told her she could continue to work from her home during and after her pregnancy in light of health concerns posed by the COVID-19 pandemic. Pursuant to that authorization, prior to being terminated Malloy advised Spencer that her plan was to continue to work from home in order to care for her newborn infant for at least one more month following her May 20, 2021 return from PDLL/CFRA leave.

Based on those allegations, venue was proper in Los Angeles County as "the county in which the aggrieved person would have worked . . . but for the alleged unlawful practice." (See *Miklosy v. Regents of the University of California* (2008) 44 Cal.4th 876, 888 ["[i]f the statutory language is unambiguous, we presume the Legislature meant what it said, and the plain meaning of the statute controls"].) None of real parties' multi-pronged challenges to this literal application of section 12965, subdivision (c), to Malloy's complaint withstands analysis.

First, real parties emphasize, as Malloy alleged in her complaint, Spencer told Malloy the company needed her to return (immediately) to in-person work at its Orange County office. But that demand, which was inconsistent with Spencer's prior

19

assurance that Malloy could continue to work from home following the birth of her child, and Spencer's termination of Malloy's employment when she refused to accede to it, were the alleged unlawful practices—interference with Malloy's leave rights and retaliation for her exercise of those rights. Venue is proper where Malloy would have worked but for that demand, not where she would have worked had she complied with it. Malloy would have worked from her home in Los Angeles.

Second, real parties note, when FEHA was first enacted and the liberal venue statute adopted, remote work was relatively rare and likely not contemplated by the Legislature. That may well be true; but section 12965, together with many other provisions of FEHA, the PDLL and CFRA, have been amended numerous times over the years. Notwithstanding those multiple amendments and the increased frequency of remote work, particularly during the last two years, the language authorizing venue in the county where the aggrieved person would have worked but for the unlawful practice remains unchanged.

Moreover, in addition to creating special rules for employment discrimination lawsuits, the FEHA venue statute applies in housing cases and other actions involving public accommodations, authorizing venue in the county where the aggrieved person "would have had access to the public accommodation but for the alleged unlawful practice." (§ 12965, subd. (c)(3).) Thus, from the outset the Legislature intended to authorize venue in FEHA cases where the allegedly unlawful practice had its harmful impact. Allowing venue in the county in which an aggrieved employee has been working remotely (and in which he or she would have continued to work but for the

20

allegedly unlawful action) is fully consistent with that legislative policy.  (See *FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 144 ["we interpret statutory language within its context, and in light of its structure, analogous provisions, and any other appropriate indicia of its purpose"]; *Tuolumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1037 [""""[w]ords must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible"""""].)

Indeed, the commonsense necessity of interpreting the FEHA venue statute literally to allow a remote worker to sue for unlawful discrimination in the county in which he or she has been working and would have continued to work, rather than where corporate headquarters are located, becomes obvious when one considers the modern reality of remote interviewing, hiring and working.  Unlike Malloy, who began her employment at real parties' physical offices, an increasing number of employees today have never been inside the offices of their employer.  To require someone in that situation to travel to a distant county to file a FEHA action would create precisely the barriers to enforcement the venue statute was intended to eliminate, as the Supreme Court explained in *Brown, supra*, 37 Cal.3d at pages 486 to 487.

Third, after pointing out that FEHA does not define where an employee works, real parties argue federal and California employment regulations consistently designate a remote worker's workplace as the office from which his or her work is directed, which in Malloy's case would be located in Orange County.  To support this argument Spencer principally relies on language in a federal regulation implementing the Family and Medical Leave Act of 1993 (FMLA) (29 U.S.C. § 2601 et seq.):  "[A]n employee's

21

personal residence is not a worksite in the case of . . . employees who work at home, as under the concept of flexiplace or telecommuting.  Rather, their worksite is the office to which they report and from which assignments are made."  (29 C.F.R. § 825.111(a)(2) (2022).)[13]

Somewhat disingenuously, however, real parties omit the context in which this Department of Labor's regulation assigns a remote worker's worksite to the employer's physical office.  The FMLA applies to employers only if they have 50 or more employees working at, or within a 75-mile radius of, a worksite for the requisite period of time.  (29 U.S.C. § 2611(2)(B)(ii) & (4)(A)(i); see 29 C.F.R. § 825.110(a)(3) (2022) ["an eligible employee is an employee of a covered employer who . . . [i]s employed at a worksite where 50 or more employees are employed by the employer within 75 miles of that worksite"].)[14] The regulation partially quoted by real parties provides the means for determining whether 50 or more employees are

_____

[13]    As Spencer explains, California Code of Regulations, title 2, section 11096 incorporates by reference the regulations interpreting the FMLA for purposes of leave under CFRA, although he fails to include section 11096's limiting language, "To the extent that they are within the scope of Government Code section 12945.2 and not inconsistent with this article, other state law, or the California Constitution."

[14]    Senate Bill No. 1383 (2019-2020 Reg. Sess.) (Stats. 2020, ch. 86. § 2), effective January 1, 2021, eliminated the parallel 75-mile radius requirement that had been part of CFRA, while also reducing from 50 to five the number of employees required for an employer to be covered by CFRA.

employed within the requisite 75 miles and prevents an employer from evading its responsibilities under the FMLA by employing individuals who work at a remote location outside the mandated 75-mile radius.  It is, in short, a regulation protecting the rights of remote workers (as well as those employees at the employer's physical worksite).  It provides no support for real parties' contention a home or other remote working site cannot be considered the location where an aggrieved person would have worked but for an unlawful employment practice for purposes of establishing venue under Government Code section 12965, subdivision (c).[15]

Fourth, real parties suggest the Legislature intended employers to have some measure of implicit or indirect control over venue for a FEHA case—that is, each special venue identified in section 12965, subdivision (c)(3), is based on some action of the employer:  where the employer committed the unlawful act; where the employer maintains relevant records; or where the employee works, subject to the control of the employer.

---

[15]    Similarly unhelpful is real parties' citation to 29 Code of Federal Regulations part 639.3 (2022), a regulation under the Worker Adjustment and Retraining Notification Act (WARN) (29 U.S.C. § 2100 et seq.).  WARN protects workers by requiring notice at least 60 days before a plant closing or mass layoff.  The cited regulation, like the FMLA regulation, designates as the site of employment for employees whose primary duties involve work outside any of the employer's regular employment sites, their home base or the office from which their work is assigned—a definition that prevents an employer from avoiding WARN's notice requirement by not counting termination of remote workers in determining whether a "mass layoff" has occurred.

Accepting Malloy's argument, they contend, could lead to absurd results, with lawsuits prosecuted in a county far from the employer's offices and no connection to the underlying facts other than the happenstance of the aggrieved employee's choice of where to work remotely.

Whether to permit remote work or to require an employee be physically present at the employer's office on a full- or part-time basis, however, is an employer's decision (albeit one that may be constrained by market conditions, as well as health and safety considerations). And an employer can always negotiate with its employees concerning the location of remote work. Regardless, as Spencer recognized in his motion for transfer in the trial court, the plaintiff's selection of venue is not final. Code of Civil Procedure section 397, subdivision (c), provides the trial court may change the place of trial "[w]hen the convenience of witnesses and the ends of justice would be promoted by the change." The FEHA venue statute does not preclude such a change of venue for the convenience of witnesses. (*Richfield Hotel Management, Inc. v. Superior Court* (1994) 22 Cal.App.4th 222, 224.) Appropriate use of the section 397 motion procedure will obviate any otherwise "absurd consequences" of interpreting the FEHA venue statute to actually mean what it says.

Finally, emphasizing the word "found" in the last portion of section 12965, subdivision (c)—"but if the defendant is not found within any such county, such an action may be brought within the county of defendant's residence or principal office"—real parties contend the defendant's physical presence in the county selected for a FEHA lawsuit is a necessary element of the special venue statute, thereby severely limiting what the Supreme Court described as the Legislature's decision to provide victims of

24

employment discrimination with a wide choice of venue. (See *Brown*, *supra*, 37 Cal.3d at p. 486.) However, as Justice Kaus made clear in his concurring opinion in *Brown*, the term "found" as used in the statute refers to the ability to serve the defendant with process, not to an additional requirement for venue. (*Id.* at p. 490 (conc. opn. of Kaus, J.) ["[s]ince the superior court's process is statewide [citation], it might be difficult to construe this somewhat quaint language literal*ly"*].) Indeed, in *Ford Motor Credit Co. v. Superior Court*, *supra*, 50 Cal.App.4th 306, the sole FEHA venue case cited by the superior court, the court of appeal explained, "If the defendant is not 'found' in any of the counties described in the three foregoing criteria, then section 12965, [former] subdivision (b) provides two other options. If none of the three enumerated criteria are satisfied, then venue rests in the county of the defendant's principal office or residence." (*Id.* at p. 310.) That is, the phrase "but if the defendant is not found" expands, rather than contracts, the plaintiff's venue options.

4. *The Alternative Request To Transfer Venue Based on the Convenience of Witnesses Is Not Properly Before Us*

In his motion for transfer and again in his return, Spencer argued, even if Los Angeles County could be a proper venue for Malloy's lawsuit, a transfer to Orange County would be appropriate for the convenience of witnesses under Code of Civil Procedure section 397, subdivision (c). Malloy opposed that alternative request, arguing Spencer had not identified any potential witnesses other than himself, let alone indicate where they lived or explained why trial in Los Angeles County would be burdensome for them, and thus failed to carry his burden to justify a transfer. (See *Rothschild v. Superior Court* (1963) 216 Cal.App.2d 778, 779 ["the burden of establishing convenience

25

is on the moving party"]; *id.* at p. 780 ["neither the convenience of a party [citation] nor an employee of a party [citation] is to be considered in determining a motion of this type"].)

Transfer pursuant to Code of Civil Procedure section 397, subdivision (c), is a matter within the sound discretion of the trial court. (*Richfield Hotel Management, Inc. v. Superior Court*, *supra*, 22 Cal.App.4th at p. 227; *Lieberman v. Superior Court* (1987) 194 Cal.App.3d 396, 401; *International Inv. Co. v. Chagnon* (1959) 175 Cal.App.2d 439, 446.) As discussed, respondent superior court did not rule on this aspect of Spencer's motion. If Spencer or the other real parties wish to renew the motion on that ground, the decision whether the convenience of witnesses and the ends of justice would be promoted by such a transfer must be determined in the first instance by the trial court.

## DISPOSITION

The petition is granted. Let a peremptory writ of mandate issue directing respondent superior court to vacate its order of February 2, 2022 granting the motion for change of venue on the ground venue is not proper in Los Angeles County and to enter a new and different order denying the motion.


PERLUSS, P. J.


We concur:


SEGAL, J.          FEUER, J.


26